**DELTA BOOK DISTRIBUTORS, INC., Charles S. Rhody, Ronald J. Walker, Fernin J. Farrell, Lawrence P. Pittman, August M. Ledesma, and Harold J. Speiss, Plaintiffs,**

v.

**Alwynn J. CRONVICH, Individually and as Sheriff for the Parish of Jefferson, State of Louisiana; Walter Lightell, Individually and as a Captain assigned to the Vice Squad of the Sheriff's Office in the Parish of Jefferson, State of Louisiana; Willard J. Lemoine, Individually and as a Detective assigned to the Vice Squad of the Sheriff's Office in the Parish of Jefferson, State of Louisiana; George Frisch, Individually and as a Detective assigned to the Vice Squad of the Sheriff's Office in the Parish of Jefferson, State of Louisiana; and Salvatore Lentini, Individually and as Marshal of the Town of Kenner, Parish of Jefferson, State of Louisiana, Defendants.**

**August M. LEDESMA, Jr., Harold J. Speiss, and Lawrence P. Pittman, Plaintiffs,**

v.

**Leander H. PEREZ, Jr., Individually and as District Attorney for the Twenty-Fifth Judicial District, State of Louisiana; Louis Reichart, Individually and as Captain in the Sheriff's Office in the Parish of St. Bernard, State of Louisiana; George Bethea, Individually and as a Deputy in the Sheriff's Office in the Parish of St. Bernard, State of Louisiana; and Earl Wendling, Individually and as a Deputy in the Sheriff's Office in the Parish of St. Bernard, State of Louisiana, Defendants.**

Civ. A. Nos. 68–1927, 69–322.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 14, 1969.

Dissenting Opinion Sept. 3, 1969.

Jack Peebles, Metairie, La., for plaintiffs.

A. W. Wambsgans, Metairie, La., James F. Quaid, Jr., New Orleans, La., Charles H. Livaudais, Chalmette, La., for defendants.

Before WISDOM, Circuit Judge, and BOYLE and RUBIN, District Judges.

BOYLE, District Judge:

These actions arise from the arrest by the defendant law enforcement officers in Jefferson[1] and St. Bernard[2] Parishes, Louisiana, of the individual plaintiffs and the incidental seizures of quantities of publications claimed to be obscene.

Those plaintiffs, residents of the Parishes of Orleans and Jefferson, are the owners and operators of newsstands in both Parishes. The corporate plaintiff, Delta Book Distributors, Inc., is a New York corporation engaged in the business of distributing books and magazines to newsstands, including those of the individual plaintiffs.

Jurisdiction is asserted and exists under 28 U.S.C. §§ 1331, 1343, 2201 and 2281 and 42 U.S.C. § 1983.

The facts in both cases are substantially parallel. In both, the arrests

1. In Delta Book, the defendant Cronvich is Sheriff of Jefferson Parish, the defendants Lightell, Lemoine and Frisch are his deputies and the defendant Lentini is Marshal of the Town of Kenner, Jefferson Parish.

2. In Ledesma, the defendant Perez is District Attorney and the defendants Reichart, Wendling and Bethea are Deputy Sheriffs of the Parish of St. Bernard.

and seizures were made without warrants and without prior adversary judicial hearing on or determination of the claimed obscene character of the seized materials. In both, publications similar to those seized were purchased by the enforcement officers [3] prior to the arrests.

Following their arrests two-count bills of information were filed against the individual plaintiffs in the Delta Book case [4] and against only one of the plaintiffs in the Ledesma case, namely, August M. Ledesma, Jr.,[5] charging violations of the Louisiana obscenity statute. Additionally, Ledesma was charged in two bills [6] with violations of the St. Bernard obscenity ordinance,[7] which,

prior to the hearing herein, had been nolle prosequied.

The charges [8] filed against Ledesma in St. Bernard Parish were laid under Louisiana Revised Statutes, Title 14, Section 106, subsections A(2) and A(3).[9] Those [10] against the Delta Book plaintiffs in Jefferson Parish were brought under the same subsections of the Louisiana statute in addition to subsection A(7).[11]

Unlike the St. Bernard Parish officers, who seized forty-five publications and a deck of playing cards, while leaving more than three hundred similar publications, the Jefferson Parish officers seized all copies of the alleged offending publications, including multiple

---

3. Three by the Jefferson Parish officers and four by their St. Bernard Parish counterparts.

4. The prosecutions instituted in the 24th Judicial District Court for the Parish of Jefferson are styled and numbered as follows: State of Louisiana v. Fernin J. Farrell, No. 113–050; Ronald J. Walker, No. 113–051; Ronald J. Walker and Charles Rhody, No. 113–052; Lawrence P. Pittman, Jr., Harold J. Spiess, Jr. and August M. Ledesma, Jr., No. 113–053; Lawrence P. Pittman, Jr., No. 113–054.

5. State of Louisiana v. August M. Ledesma, Jr., Nos. 17–085 and 17–086 of the docket of the 25th Judicial District Court for the Parish of St. Bernard.

6. State of Louisiana v. August M. Ledesma, Jr., Nos. 17–087 and 17–088, 25th Judicial District Court for the Parish of St. Bernard.

7. No. 21–60.

8. In case No. 17–085, it is charged that Ledesma, on January 27, 1969, "did produce, sell, exhibit, give or advertise with the intent to primarily appeal to the prurient interest of the average person, lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper, story paper, writing, phonograph record, picture drawing, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of sexually indecent character which may or may not require mechanical or other means to be transmitted into auditory, visual or sensory representations of such sexually indecent character * * *" in violation of R.S. 14:106, subsection A(2).

In case No. 17–086, it is charged that Ledesma "did possess" rather than "did produce" the objects described [in the information in No. 17–085] in violation of R.S. 14:106, subsection A(3).

9. See Footnote 23.

10. The bills of information are identical as to all plaintiffs (see Footnote 4) except as to the dates on which and places at which the offenses are alleged to have occurred, and in substance charge that the respective plaintiffs did " * * * wilfully and intentionally exhibit and possess with intent to display, advertise and/or sell lewd, lascivious and/or sexually indecent magazines * * *" (Count 1) and did " * * * wilfully and intentionally exhibit and possess with the intent to display, advertise and/or sell lewd, lascivious and/or sexually indecent magazines and/or books * * * to the general public and/or particularly in the presence of unmarried persons under the age of 17 years * * *" (Count 2) in violation of subsection A(2), (3) & (7), R.S. 14:106.

11. See Footnote 23.

copies of some, which could be found on the premises.[12]

In both cases, the Federal constitutional issues raised herein were presented to the respective State Trial Courts in Motions to Quash the bills of information and to Suppress the seized evidence and were decided adversely to the plaintiffs herein.

In view of the result we reach, it is unnecessary in either case to consider whether the seized publications are in fact obscene.[13]

The principal relief prayed for in each case is identical,[14] viz., a declaratory judgment decreeing the Louisiana statute unconstitutional (a) on its face and (b) as applied to the plaintiffs; preliminary and permanent injunctions enjoining the defendants[15] (a) from prosecuting the plaintiffs under the pending charges, (b) from prosecuting them for violation of the statute in the future and (c) from seizing materials in the future (1) without a prior adversary judicial proceeding and (2) without a warrant; the return of the seized materials and damages.

We have for decision all issues, except the issue of damages which was severed and reserved for the single Judge Court.

The guarantee of freedom of speech embodied in the First Amendment to the United States Constitution does not extend to obscenity. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Consequently, obscene utterances and materials, properly defined, may be the subject of Federal and State regulation or suppression. However, since "constitutionally protected expression * * * is often separated from obscenity only by a dim and uncertain line,"[16] any attempt, be it Federal or State, to regulate or suppress allegedly obscene material must be closely scrutinized to the end that protected expression is not abridged in the process. Accordingly, "the Constitution requires a procedure 'designed to focus searchingly on the question of obscenity' before speech can be regulated or suppressed. Marcus v. Search Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127," and "[t]he dissemination of a particular work, which is alleged to be obscene, should be completely undisturbed until an independent determination of obscenity has been made by a judicial officer, including an adversary hearing. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 211, 84 S.Ct. 1723, 12 L.Ed.2d 809; Metzger v. Pearcy, 7 Cir., 393 F.2d 202,

12. From the Expressway News Center, 56 magazines were seized on August 23, 1968; from the Veterans Newsstand, 200 and 296 books and magazines were seized on September 6 and October 18, 1968, respectively; and from the Broad Bruxelles Seafood & News Center, 138 and 62 books and magazines were seized on October 3 and 18, 1968, respectively.

13. In the Delta Book case, the parties stipulated, though subject to the plaintiffs' objection of irrelevancy, that if called as witnesses "men and women from different income levels and various ages, law enforcement personnel, professors, school teachers, ministers, priests and rabbis would testify that in their opinion all of the aforementioned books and magazines are: (a) obscene, in the case of witnesses called by the defendants, and (b) not obscene, in the case of said witnesses called by the plaintiffs."

Also in the Delta Book case, "samples" of the seized publications were received in evidence subject to plaintiffs' objection of irrelevancy.
In the Ledesma case, all of the seized materials were received in evidence subject also to the plaintiffs' objection of irrelevancy.

14. In the Ledesma case, the plaintiffs also seek to have the St. Bernard Parish obscenity ordinance declared unconstitutional.

15. In Delta Book, the District Attorney for the Parish of Jefferson is not a party defendant. In Ledesma, the District Attorney for the Parish of St. Bernard is a defendant.

16. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

204; United States v. Brown, S.D.N.Y., 274 F.Supp. 561; Cambist Films, Inc. v. Illinois, N.D.Ill., Eastern Div., 292 F.Supp. 185, decided October 21, 1968."[17]

■ Since prior restraint upon the exercise of First Amendment rights can be exerted through seizure[18] (with or without a warrant) of the allegedly offensive materials, arrest (with or without a warrant) of the alleged offender or through the threat of either or both seizure and arrest, the conclusion is irresistible in logic and in law that none of these may be constitutionally undertaken prior to an adversary judicial determination of obscenity.[19]

We are mindful of the fact that even attempts to regulate obscenity incorporating procedures for affording the required adversary hearing would themselves constitute prior restraints.[20] For example, it might be argued that the expense of legal representation at such hearings, the apprehension as to whether or not the allegedly obscene materials should continue to be sold pending the outcome of the hearing and soforth would serve to "chill"[21] First Amendment rights. We can readily conceive, therefore, that much litigation would be spawned by the adoption of adversary hearing procedures. Nonetheless, it is apparent that there must be some permissible prior restraint, be it however subtle, if obscenity is not protected by the First Amendment and State attempts to regulate it are to be enforceable. It is left to those states seeking to regulate obscenity to devise constitutionally acceptable procedures for the enforcement of any such regulations. However, these procedures, among others, may have to incorporate provisions immunizing alleged violators from criminal liability for any activities occurring prior to an adversary judicial determination of the fact of obscenity.

■ Applying these principles to the cases before us, the arrests, as well as the seizures claimed to be incident thereto, are clearly invalid for lack of a prior adversary determination of the obscenity of the materials upon which the arrests and seizures were based. The fact that in each case some materials were purchased rather than seized is of no moment in view of the requirement of an adversary determination of obscenity prior to arrest or threat of arrest.[22]

We turn now to the specific relief prayed for in each of the suits.

■■ Initially, we are asked to declare the Louisiana Obscenity Statute[23] unconstitutional on its face and as applied. This same relief is sought with respect to the St. Bernard Parish Obscenity Ordinance.[24] Since the Louisiana statute is composed of three lettered paragraphs, with Paragraph "A", defining obscenity, being further subdivided into seven subparts each of which delineates a separate offense, we address ourselves solely to those subsections un-

17. Cambist Films, Inc. v. Tribell, 293 F. Supp. 407 (E.D.Ky.1968).

18. As Cambist Films, Inc. v. Tribell, footnote 17, supra, makes clear, the principles announced in such cases as A Quantity of Books, supra, with respect to searches and seizures in civil forfeiture cases apply with equal, if not greater, force in cases involving searches and seizures incident to criminal prosecutions.

19. Poulos v. Rucker, 288 F.Supp. 305 (M.D.Ala.1968).

20. "Doubtless any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene * * *." Smith v. People, 361 U.S. 147, 154–155, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1960).

21. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

22. Of course, the defendants cannot be ordered to return the purchased materials, as in the instance of those seized, since title thereto has passed.

23. La.R.S. 14:106. See Appendix A.

24. Ordinance #21–60 of the Parish of St. Bernard. See Appendix B.

der which any plaintiff was charged in either of the cases.[25] The subsections of Paragraph "A" with which we are concerned are "(2)", "(3)" and "(7)".

The plaintiffs contend that the statute is unconstitutional on its face because it defines obscenity too broadly, affords no ascertainable standard of guilt, and lacks the required element of scienter.

We are aware of the United States Supreme Court's per curiam reversal in Henry v. Louisiana, 392 U.S. 655, 88 S.Ct. 2274, 20 L.Ed.2d 1343 (1967), citing only Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), also a per curiam opinion. In view of the fact that the decision of the Louisiana Supreme Court in *Henry* (reported at 250 La. 682, 198 So.2d 889) not only upheld the constitutionality of La.R.S. 14:106, subsection A(2) and (3) as not being violative of freedom of speech or vague, but, in addition, erroneously [26] construed the term "contemporary community standards" to embody a purely local, rather than national, norm, we cannot conclude from the per curiam opinion that the Supreme Court of the United States passed upon the constitutionality of La.R.S. 14:106.

■ A study of subsections "(2)" and "(3)" convinces us that neither subsection is unconstitutional on its face. Subsection "(3)" incorporates the standards of obscenity contained in subsection "(2)". We find that these subsections define obscenity in terms substantially similar to those approved in Roth v. United States, supra, in that expression

regulated by the statute is that intended "to primarily appeal to the prurient interest of the average person." As was the court in Cambist Films, Inc. v. Tribell, supra, we are aware of the language of Mr. Justice Brennan in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) to the effect that material may not be legally adjudged obscene unless it meets each of the following three tests: "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." And, we concur in the statement of the Court in Tribell, supra, that "[i]n listing these three elements, Mr. Justice Brennan was not making *additional* requirements, but was merely explaining the *Roth* test." Therefore, we find that subsections (2) and (3) of Paragraph A of La.R.S. 14:106, while not explicitly inclusive of the tripartite test enunciated by Mr. Justice Brennan, do, if judicially interpreted and applied in light thereof, satisfy constitutional requirements.

Plaintiffs' charge that the statute is vague is without merit in so far as subsection A(2) and (3) are concerned. The definition of obscenity through the aid of adjectives such as "lewd," "lascivious" and "filthy" and the adjectival

25. This Court declines to render a declaratory judgment concerning the constitutionality vel non of the entire statute in view of the fact that as to those sections or subsections under which plaintiffs have not been charged there is no "actual controversy" as required by 28 U.S.C. § 2201. Although "a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief" Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) and abstention has been disapproved in cases involving First Amendment rights, none-

theless, the Supreme Court in *Zwickler* in footnotes 3 and 15 recognized that before declaratory relief is proper the usual prerequisites therefor must be established. Accordingly, as to those sections under which plaintiffs have not been charged, the prayer for declaartory relief comes prematurely in that there is neither "substantial controversy" nor "sufficient immediacy." See Machesky v. Bizzell, 5 Cir., 1969, 414 F.2d 283.

26. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

phrase "sexually indecent" embodies an ascertainable standard of guilt when these terms are taken to have their commonly accepted meanings. Furthermore, if the term "obscene" is itself not unconstitutionally vague,[27] a fortiori, the term "obscenity" explained by the adjectives used in these subsections is not vague.

■ Finally, plaintiffs' attack upon the statute for lack of the required element of "scienter" is without merit. The use of the word "intentional" and the phrase "with the intent" in the statute satisfy the requirements for "scienter" set forth in Smith v. People, supra. Indeed, we concur in the following statement of the Supreme Court of Louisiana in State v. Roufa, 241 La. 474, 129 So.2d 743 (1961): "We conclude that the word 'Intentional' and the phrase 'With intention' (sic) in the Louisiana Obscenity Statute mean that knowledge is implied where one has criminal intent. It leaps to the mind that knowledge is necessary to intention and that one cannot have intention without knowledge. We find that Paragraph Two of LSA–R.S. 14:106 meets the requirements laid down in the Smith case * * *." (Citations and footnote reference omitted.)

■ Subsection "(7)" of Paragraph A is unconstitutional on its face as plaintiffs contend. A simple reading of this subsection reveals that by its terms it is overbroad.[28] A literal application thereof would, for example, make it a criminal offense to display, for any purposes, universally accepted anatomical works or recognized works of art or the like anywhere but "in art galleries." Such a limitation is patently unconstitutional.

■ We, here, note that the fact that subsection "(7)" of Paragraph A of the statute is unconstitutional, is not fatal to the entire statute in light of the severability clause found in Section 2 of Act 647 of 1968.[29]

We find a total lack of evidence to support the contention that La.R.S. 14:106 is unconstitutional as applied to the plaintiffs.[30] To the extent that this contention is based upon the lack of the required procedural safeguards prior to seizure or arrest, it has been disposed of by what we have hereinabove held with respect to the necessity of an adversary judicial determination of obscenity.

■ The plaintiffs in the case arising from St. Bernard Parish were charged under the St. Bernard Obscenity Ordinance as well as under the State statute. Subsequently, but prior to the hearing in this court, the charges under the ordinance were nolle prosequied. However, we are asked to pass on the constitutionality of this ordinance

27. Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

28. "The portrayal of sex, e. g. in art, literature and scientific works, is not itself sufficient reason to deny the material the constitutional protection of freedom of speech and press." Roth v. United States, supra.

29. La.R.S. 14:106 would appear to be severable even in the absence of a severability clause in view of the fact that each subpart of Paragraph A delineates a separate and independent offense. The act would, with clarity, state an offense notwithstanding total deletion of subpart "(7)" of Paragraph A. For a compre-

hensive discussion of the factors to be considered in determining severability see Statutes and Statutory Construction, Sutherland, Vol. 2, Sections 2401 et seq.

30. We make no finding, however, as to whether the allegedly obscene materials here are protected by the First Amendment, and whether, therefore, the statute would be unconstitutional as applied to them. That question requires the application of the constitutional standard of obscenity to the seized printed matter. We leave the determination to be made in the first instance by the state court after the adversary hearing which we today hold necessary.

for the reason that plaintiffs fear prosecution thereunder at some future date.[31] Accordingly, in order to grant complete relief, we have examined the ordinance and find it to be unconstitutional and unenforceable. The ordinance is poorly drafted and in some respects may be unintelligible and, therefore, is mortally infected with the vice of vagueness. Additionally, the ordinance is too broad, in that it seeks to regulate material protected by the First Amendment as interpreted by recent judicial decisions.

Assuming that this ordinance was constitutional or that a constitutional replacement therefor was enacted, local authorities in the enforcement thereof would be bound by the same requirement of an adversary hearing as State authorities are with respect to the enforcement of State statutes.

Plaintiffs seek to enjoin the defendants from proceeding with the prosecutions pending against them, as well as from instituting any new prosecutions and undertaking any further seizures or arrests. We decline to grant any injunctive relief in either of the cases before us.

■■■ In view of our holding that the arrests and seizures in these cases are invalid for want of a prior adversary judicial determination of obscenity, which holding requires suppression and return of the seized materials,[32] the prosecutions should be effectively terminated. We have no reason to question that the defendant law officers and prosecuting attorneys of both Parishes will, in good faith, abide by our rulings herein as to pending or future prosecutions or future arrests and seizures. Doing so will make it unnecessary to issue any injunctions with respect to either, whether under the State statute or the St. Bernard Parish ordinance.[33] However, we retain jurisdiction for the purposes of hereafter entering any orders necessary to enforce the views expressed herein.

Accordingly, for the reasons assigned, it is ordered that judgment in both cases be entered decreeing:

1. That all seized materials be returned, instanter, to those from whom they were seized,

2. That said materials be suppressed as evidence in any pending or future prosecutions of the plaintiffs,

3. That the preliminary and permanent injunctions prayed for be denied, and

31. Although it is not the function of a three-judge federal district court to determine the constitutionality or enjoin the enforcement of a local ordinance, as distinguished from statutes of state-wide application, Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), the court takes this opportunity to express its views on the constitutionality of the ordinance in the interest of judicial economy. The view expressed by this court concerning the constitutionality of the ordinance is shared by the initiating federal district judge and is adopted by reference in his opinion issued contemporaneously herewith.

32. Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, decided by the Supreme Court of the United States on June 23, 1969, limits the area in which a search may be made incidental to a lawful arrest. We need not be concerned with whether Chimel applies to

searches and seizures occurring before June 23, 1969. In the light of the absence of any direct controlling expression in Chimel and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), it would appear that the limiting effect of Chimel would not be held retrospectively applicable. However, even assuming the contrary, in view of our holding that the lack of a prior adversary hearing taints the warrantless arrests involved here, the searches, whether confined to the limits set by Chimel or not, and the resultant seizures would fall by reason of the unlawful arrests incidental to which the defendants urge they acted in seizing the materials.

33. See footnote 29, supra.

4. That jurisdiction be retained herein for the issuance of such further orders as may be necessary and proper.

BOYLE, District Judge.

For the reasons assigned in the foregoing 3-Judge Court opinion, it is ordered that judgment be entered herein decreeing:

1. That St. Bernard Parish Ordinance No. 21–60 is unconstitutional.

2. That jurisdiction be retained herein for the issuance of such further orders as may be necessary and proper.

## APPENDIX A

### § 106. Obscenity

A. Obscenity is the intentional:

(1) Exposure of one's person in a public place in such manner that any part of a sex organ may be seen by another person, with the intent of arousing sexual desire.

(2) Production, sale, exhibition, gift, or advertisement with the intent to primarily appeal to the prurient interest of the average person, of any lewd, lascivious, filthy or sexually indecent written composition, printed composition, book, magazine, pamphlet, newspaper, story paper, writing, phonograph record, picture, drawing, motion picture film, figure, image, wire or tape recording or any written, printed or recorded matter of sexually indecent character which may or may not require mechanical or other means to be transmitted into auditory, visual or sensory representations of such sexually indecent character.

(3) Possession with the intent to sell, exhibit, give or advertise .any of the pornographic material of the character as described in Paragraph (2) above, with the intent to primarily appeal to the prurient interest of the average person.

(4) Performance by any person or persons in the presence of another person or persons with the intent of arousing sexual desire, of any lewd, lascivious, sexually indecent dancing, lewd, lascivious or sexually indecent posing, lewd, lascivious or sexually indecent body movement.

(5) Solicitation or attempt to entice any unmarried person under the age of seventeen years to commit any act prohibited by this section.

(6) Requirement by a person, as a condition to a sale, allocation, consignment or delivery for resale of any paper, magazine, book, periodical or publication to a purchaser or consignee, that such purchaser or consignee receive for resale any other article, book or publication reasonably believed by such purchaser or consignee to contain articles or material of any kind or description which are designed, intended or reasonably calculated to or which do in fact appeal to the prurient interests of the average person in the community, as judged by contemporary community standards, or the denying or threatening to deny any franchise or to impose any penalty, financial or otherwise, by reason of the failure of any person to accept such articles or things or by reason of the return thereof.

(7) Display of nude pictures of a man, woman, boy or girl in any public place, except as works of art exhibited in art galleries.

B. In prosecutions for obscenity, lack of knowledge of age or marital status shall not constitute a defense.

C. Whoever commits the crime of obscenity shall be fined not less than one hundred dollars nor more than five hundred dollars, or imprisoned for not more than six months, or both.

When a violation of Paragraphs (1), (2), (3), and (4) of Subsection (A) of this Section is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not more than one thousand dollars, or imprisoned for not more than five years with or without hard labor, or both.

Amended by Acts 1958, No. 388, § 1; Acts 1960, No. 199, § 1; Acts 1962, No. 87, § 1; Acts 1968, No. 647, § 1, emerg. eff. July 20, 1968, at 1:30 P.M.

APPENDIX B
Police Jury
ST. BERNARD PARISH
St. Bernard Courthouse Annex

CHALMETTE, LOUISIANA

EXTRACT OF THE OFFICIAL PROCEEDINGS OF THE POLICE JURY OF THE PARISH OF ST. BERNARD, STATE OF LOUISIANA, TAKEN AT THE REGULAR MEETING HELD IN THE POLICE JURY ROOM OF THE COURTHOUSE ANNEX, AT CHALMETTE, LOUISIANA, ON NOVEMBER 2, 1960, AT ELEVEN O'CLOCK (11:00) A.M.

On motion of Celestine Melerine, secondee by Joseph V. Papania and upon recommendation of the District Attorney of the Parish of St. Bernard, the following Ordinance was adopted:

## ORDINANCE #21–60

An Ordinance known as the Ordinance of St. Bernard Parish, relative to prohibiting and defining the offense of obscenity and indecent literature, adding thereto the offense of "attempt", and prescribing penalties for the violation thereof.

### SECTION 1.

Offense of obscenity defined and prohibited.

### SECTION 2.

BE IT ORDAINED, by the Police Jury of the Parish of St. Bernard that obscenity is prohibited and is hereby defined as the intentional.

### SECTION 3.

BE IT FURTHER ORDAINED, that public personal exposure of the female breast or the sexual organs or fundament of any person of either sex.

### SECTION 4.

BE IT FURTHER ORDAINED, that production, sale, exhibition, possession with intent to display, or distribution of any obscene, lewd, lascivious, prurient or sexually indecent print, advertisement, picture, photograph, written or printed composition, model, statute, instrument, motion picture, drawing, phonograph recording, tape or wire recording, or device or material of any kind.

### SECTION 5 (a)

BE IT FURTHER ORDAINED that tho performance of any dance, song, or act in any public place, or in any public manner representing or portraying or reasonable calculated to represent or portray any act of sexual intercourse between male and female persons, or any act of perverse sexual intercourse or contact, or unnatural carnal copulation, between persons of any sex, or between persons and animals.

### SECTION 5 (b)

OR FURTHER, the performance in any public place, or any public manner of any obscene, lewd, lustful, lascivious, prurient or sexually indecent dance, or the rendition of any obscene, lewd, lustful, lascivious, prurient or sexually indecent song or recitation.

### SECTION 6.

BE IT FURTHER ORDAINED, PRODUCTION, POSSESSION WITH INTENT to display, exhibition, distribution, or sale of any literature as defined herein containing one or more pictures of nude or semi-nude female persons, wherein the female breast or any sexual organ is shown or exhibited, and where, because of the number or manner of portrayal in which such pictures are displayed in such literature, they are designed to appeal predominantly to the prurient interest.

### SECTION 7. BE IT FURTHER ORDAINED, that it shall also be unlawful for any person to attempt to commit any of the violations set forth in this section.

### SECTION 8. BE IT FURTHER ORDAINED, that any person upon conviction of a violation of this section shall be sentenced to serve not more than ninety (90) days, or pay a fine of not

more than one hundred dollars ($100.00) or both, in the discretion of the Court.

BE IT FURTHER ORDAINED, that persons convicted of an attempt to violate this section shall be sentenced to not more than one-half of the maximum penalty prescribed, or pay not more than half of the maximum fine or both, as set forth above.

SECTION 9. BE IT FURTHER ORDAINED, that the word literature as used herein means and includes a book, booklet, pamphlet, leaflet, brochure, circular, folder, handbill or magazine. The word picture as used herein means and includes any photograph, lithograph, drawing, sketch, abstract, poster, painting, figure, image, silhouette, representation or facsimile.

SECTION 10. BE IT FURTHER ORDAINED, that this Ordinance shall be published in the Official Journal of the Parish, the St. Bernard Voice.

This Ordinance having been submitted to a vote, the vote thereon was as follows:

YEAS: Henry C. Schindler, Jr., Joseph V. Papania, Peter N. Huff, Peter Perniciaro, Louis P. Hunster, John W. Booth, Sr., Claude S. Humphrey, Celestine Melerine, Edward L. Jeanfreau, and Mrs. Blanche Molero.

NAYS: None

ABSENT: None

And the Ordinance was declared adopted on this, the 2nd day of November, 1960.

RUBIN, District Judge (dissenting):

I respectfully dissent from that portion of the decision that holds it unconstitutional for the state to arrest a defendant on a charge of violating a valid statute punishing the crime of selling pornographic literature, and from the suggestion that, to be constitutional, a state statute "may have to incorporate provisions immunizing alleged violators from criminal liability for any activities occurring prior to an adversary judicial determination of the fact of obscenity."

My brothers and I agree that we are bound by the principle "that obscenity is not within the area of constitutionally protected speech or press." Roth v. United States, 1957, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498. Adhering, as we must, to the repeated decisions of a majority of the Supreme Court, we unanimously reject the dissenting view of Justices Black and Douglas that both federal and state governments are "without any power whatever under the Constitution to put any type of burden on speech and expression of ideas of any kind * * *." Ginzburg v. United States, 1966, 383 U.S. 463, 475, 86 S.Ct. 942, 950, 16 L.Ed. 2d 31.

But the majority of this court suggests that, in order to exercise its constitutional power, the state must adopt a procedure unprecedented in criminal law and incapable of effective enforcement. For, if their view is correct, no prosecution could be commenced under this statute that we all agree is constitutional unless the state first holds a separate adversary proceeding against every single news dealer for each item of pornography that he might choose to sell at any time. Even though a court might have decided that a dealer on one street was violating the law by selling a work that had been held pornographic, a dealer on the next street could not be prosecuted until he also had been afforded a "prior adversary hearing" concerning the self-same item. And after it had been determined that the current issue of "Spread Eagle," consisting of photographs proclaimed to be for "Adults Only" (State Exhibit 7), violated the statute, the defendant would be free (by simply substituting one model for another) to sell another issue of that prurient publication containing photographs having identical pornographic content.

The Constitution forbids a statute that would punish a dealer for innocently selling pornographic material. The

statute must require knowledge—"scienter." Smith v. California, 1959, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. But, if a statute does so, the evidence is sufficient to justify conviction if it shows the defendant to be "aware of the character of the material" and his action to be "not innocent but calculated purveyance of filth." Mishkin v. New York, 1966, 383 U.S. at 512, 86 S.Ct. at 965. Since we unanimously conclude that "scienter" is a requirement of the Louisiana statute, constitutional requisites are fully satisfied.

"In considering searches incident to arrest, it must be remembered," Justice White said in his dissent in Chimel v. California, 1969, 395 U.S. 752, 782–783, 89 S.Ct. 2034, 2050–2051, 23 L.Ed.2d 685, "that there will be immediate opportunity to challenge the probable cause for the search in an adversary proceeding. The suspect has been apprised of the search * * * and having been arrested, he will soon be brought into contact with people who can explain his rights. * * * An arrested man, by definition conscious of the police interest in him, and provided almost immediately with a lawyer and a judge, is in an excellent position to dispute the reasonableness of his arrest and contemporaneous search in a full adversary proceeding."

That in my view is all that the state is required to do. It is no longer an acceptable proposition in tort law that a dog is entitled to one free bite[1]; there should be no rule in criminal law—even by virtue of the protection accorded to freedom of speech—that every peddler of pornography is entitled to one free essay at scatology.

Never has the Supreme Court intimated such a requirement. It gave no hint of it when, without exacting any adversary hearing prior to prosecution, it upheld the conviction of a defendant under a New York statute for a sale of obscene materials to minors, in Ginsberg v. New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195, or when it upheld another conviction under the New York statute for "hiring others to prepare obscene books, publishing obscene books, and possessing obscene books with intent to sell them." Mishkin v. New York, 1966, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56. It is obviously impossible to hold a "prior adversary hearing" with respect to the offense of hiring someone to prepare an obscene book and difficult to conceive that it would be practical to hold one for the offense of publishing them. Nor is the rule this Court now adopts consonant with the conviction affirmed in Ginzburg v. United States, 1966, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31, under an indictment charging violations of the federal obscenity statute.

In Near v. Minnesota, 1931, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357, the Court said, " * * * [T]he protection even as to previous restraint is not absolutely unlimited. * * * [T]he primary requirements of decency may be enforced against obscene publications.[2] " "The phrase, 'prior restraint'

---

1. See Prosser on Torts, 516 (3d ed. 1964).

2. The motion picture cases are interesting applications. See, e. g., Freedman v. Maryland, 1965, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649; Times Film Corp. v. City of Chicago, 1961, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403; Interstate Circuit, Inc. v. City of Dallas, 1968, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed. 2d 225. In Tyrone Inc. v. Wilkinson, 4 Cir. 1969, 410 F.2d 639, the court held "that the Constitution requires an adversary hearing to determine obscenity before seizure of a movie." However, the district judge "properly refused to enjoin the state court prosecution for violation of the criminal obscenity statute in the absence of a showing of bad faith enforcement of a statute unconstitutional on its face or as applied." The theatre owner was required to deliver to the prosecuting attorney upon request a copy of the movie for reasonable use in the preparation and trial of the criminal charges. This follows the views expressed in Metzger v. Pearcy, 7 Cir. 1968, 393 F.2d 202, 204, where the court affirmed an injunction ordering return of four prints of a film seized without a search warrant; the affirmed order required the theatre owner to deliver to the prosecuting attor-

is not a self-wielding sword. Nor can it serve as a talismanic test." Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 441, 77 S.Ct. 1325, 1328, 1 L.Ed.2d 1469.[3] But even if prior restraint is entirely reprobated, the majority opinion fails to draw the distinction between previous restraint on the right of free speech (like the seizure of a publication before it can be sold) and a criminal statute that imposes subsequent punishment on pornography, an activity by definition not protected by the First Amendment.[4]

Concurring in the result in *Roth* and its companion case, Alberts v. California, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, Chief Justice Warren spoke in terms that are applicable here: "The defendants in both these cases were engaged in the business of purveying textual or graphic matter openly advertised to appeal to the erotic interest of their customers. They were plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. I believe that the State and Federal Governments can constitutionally punish such conduct." 354 U.S. at 495, 77 S.Ct. at 1315.

The enactment of a criminal statute is intended to deter unlawful conduct. But any possibility of some other kind of state action against the individual is likewise a possible deterrent. The fainthearted may be discouraged from pursuing a course of conduct by the possibility of an order to appear in court. Many a man will flinch from any kind of a controversy with the state. Even the threat of facing a judge may be a potential prior restraint, and it is conceivable that some news dealers might be willing to run the risk of a fine rather

ney upon request one print of the film for use in the trial of the criminal charge. "The decisions of this Court and of the District Court do not prohibit the prosecution under the Indiana obscenity statutes."

3. The distinction has been repeatedly referred to although it has seldom been thought necessary to state it at length. But dissenting from a decision later overturned, Chief Justice Warren said in Times Film Corp. v. Chicago, 1961, 365 U.S. 43, 53, 81 S.Ct. 391, 397, 5 L.Ed.2d 403: "[T]his Court has carefully distinguished between laws establishing sundry systems of previous restraint on the right of free speech and penal laws imposing subsequent punishment on utterances and activities not within the ambit of the First Amendment's protection." See also, e. g., Justice Brennan's observation in *Ginzburg, supra*, "A conviction for mailing obscene publications, but explained in part by the presence of this element, does not necessarily suppress the materials in question, nor chill their proper distribution for a proper use." 383 U.S. at 475, 86 S.Ct. at 949. And in *Near, supra*, the court said, "But it is recognized that punishment for the abuse of the liberty accorded to the press is essential to the protection of the public, and that the common-law rules that subject the libeler to responsibility for the public offense, as well as for the private injury, are not abolished by the protection extended in our Constitutions." 283 U.S. at 715, 51 S.Ct. at 630. *Cf.* Lockhart, Kamisar and Choper, The American Constitution, p. 761: "Why should *anyone* have to take the risk that the Court's judgment of what is obscene will not agree with his own honest belief that it is not obscene under the evolving constitutional standards? * * * Does the current uncertainty as to the standard suggest that imposition of criminal liability except for hard core pornography is inappropriate? That the preferred way to deal with the problem may be to place the book on trial as in *Memoirs*? See Kauper, supra, at 71–72; Lockart & McClure (1960) at 106–07."

4. Professor Paul A. Freund has written perceptively about the distinctions between prior restraint and subsequent punishment in the Supreme Court and Civil Liberties, 1951, 4 Vand.L.Rev. 533, 537. As he observes, "Certain distinctions commonly drawn between prior restraint and subsequent punishment will not bear analysis." But he writes that there are also real differences between the two and concludes, in language quoted with approval in Kingsley Books, *supra*, "In sum, it will hardly do to place 'prior restraint' in a special category for condemnation. What is needed is a pragmatic assessment of its operation in the particular circumstances." 4 Vand.L.Rev. at 539.

than be bold enough to pay the price of successfully contesting an adversary proceeding. Yet on a record that lacks evidence of any kind dealing with the psychology of individual intimidation, my brothers conclude intuitively that one restraint touches the defendant so lightly as to be lawful while the other bears so heavily as to be invalid.

Were the existence of any touch of "prior restraint" the tincture by which state conduct is stained unconstitutional, then presumably the existence of the possibility of an adversary hearing, or (in other contexts) the possibility of prosecution for criminal libel, or of the filing of a civil suit for libel, would color unlawful all government action in these areas. And it would mar the arrest, without a prior proceeding, of a defendant for violating the federal statute prohibiting the knowing use of the mails to transmit "every obscene, lewd, lascivious, indecent, filthy or vile article," 18 U.S.C. § 1461; as well as for transgressing the law that makes it a crime to mail matter containing "upon the envelope or outside cover * * * language of an indecent, lewd, lascivious or obscene character," even though the contents are "otherwise mailable by law"; 18 U.S.C. § 1463; and the provision that makes it a crime knowingly to import such material, 18 U.S.C. § 1462. And such a requirement would apparently dye entirely unconstitutional 18 U.S.C. § 1464, which makes it a criminal offense to utter "any obscene, indecent, or profane language by means of radio communication," because there would be no way to have a prior adversary hearing with respect to such "one shot" utterances unless all radio communication were required to be previously transcribed.[5]

The procedure suggested in the majority opinion comes almost full cycle to the censorship condemned in *Near, supra,* in 1931. "This is the essence of censorship," the court there said, with regard to a procedure whereby the state might bring a publisher before a judge on a charge of conducting the business of publishing obscene, lewd and licentious matter and obtain an injunction against further publication.

Despite the allegations of the petition, the court does not find that the defendants have harassed the plaintiffs, or that they have employed threats of prosecution to chill freedom of speech, or that there has been any other kind of misuse of the processes of state criminal justice. If there were proof of such facts, a different case would be presented. But the court, in action from which I do not dissent, refrains even from issuing an injunction. It merely declares the state's procedure constitutionally infirm on its face.

When the Supreme Court, only a few weeks ago, held it unconstitutional to make private possession of obscene material a crime it said, *"Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." Stanley v. Georgia 1969, 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542. If this be true, the Constitution does not deny the state the power to arrest a person on a charge of selling pornography that appeals only to pruriency, affronts all community standards, and completely lacks social worth without first haling that person into

See also Schwartz, A Commentary on the Constitution of the United States, Part III, Rights of the Person, Volume I, Sanctity, Privacy and Expression, § 450, pp. 336 et seq. (1968).

5. A question might be raised whether a warrant could properly be issued to seize pornography for use as evidence in such

a "prior hearing," for a search warrant may be issued only for property "designed or intended for use or which is or has been used as a means of committing a criminal offense," Rule 41(b), Federal Rules of Criminal Procedure, or for evidence that a crime has been committed. Warden v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

court to caution him that what he is doing is unlawful. From the proposition that this is what the Constitution means I must dissent.[6]

6. If the arrest had been held valid, it would have been necessary to consider the validity of the seizures made of some of the material involved under the doctrine of the *Chimel* case, *supra*, and the possible applicability of the rule of that case to seizures made before it was decided. It would then also have been necessary to consider whether those particular publications obtained properly (for example by lawful seizure or by purchase) are protected by the First Amendment.

But since the majority does not reach these questions, it is needless to comment on them. Indeed, these might be matters for a single judge to decide after resolution of the questions involving constitutionality of the state statute.

Nor is there need for comment about the nature of the publications. Although they are unfit for publication in the published reports, I attach for the record xerox copies of the covers of five of them. The covers alone show that they proclaim the "leer of the sensualist," Ginzburg, 383 U.S. at 468, 86 S.Ct. 942, and that no dealer could fail to recognize the likely pornography of the contents.