## STATE v. SORENSON.
### No. 49033.
Circuit Court, Brevard County, Criminal Appeal.

March 25, 1970.

Michael Jeffries of Fee, Parker & Neill, Fort Pierce, for the appellant.

Peter Haddad, Assistant County Solicitor, Titusville, for the appellee.

VOLIE A. WILLIAMS, Jr., Circuit Judge.

*Opinion:* This is an appeal by the appellant, Marilyn Sorenson, of her conviction in the Brevard County Magistrates Court on September 17, 1969, for violation of chapter 847 of the Florida Statutes, more commonly known as the Obscene Literature Laws. Conviction was based upon the sale by Mrs. Sorenson on May 17, 1969 of a paperback book entitled *Kinky Tricks* to Deputy Lawrence A. Cline of the Brevard County Sheriff's Department.

When offered into evidence at trial, appellant objected to the book's admissibility and moved for its suppression on the grounds that her arrest preceded a judicially superintended hearing on the question of the book's obscenity. This point has been raised on appeal and apparently presents a question of first impression for a state court in Florida.

The principle that materials which enjoy First Amendment protection may not be lawfully seized prior to a judicial adversary hearing on the question of obscenity has been settled by the weight of authority. Marcus v. Search Warrants, 367 U.S. 717, 81 S. Ct. 1708, 6 L. Ed. 2d 1127 (1961); A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S. Ct. 1723, 12 L. Ed. 2d 809 (1964); Metzger v. Pearcy, 393 F. 2d 202 (7th Cir., 1968); City News Center v. Carson, 298 F. Supp. 706 (M.D. Fla., 1969); Felton v. City of Pensacola, 200 So.2d 842 (1st DCA, 1967).

However, the contention that an adversary hearing must precede an arrest, is a relatively new concept having its origins in Delta Book Distributors, Inc. v. Cronvich, 304 F. Supp. 662 (E. D. La., 1969). In reaching this conclusion, Judge Boyle, writing the opinion for the three-judge court, said —

Since prior restraint upon the exercise of First Amendment rights can be exerted through seizure (with or without a warrant) of allegedly offensive materials, arrest (with or without a warrant) of the alleged offender or through the threat of either or both seizure and arrest, the conclusion is irresistible in logic and in law that none of these may be constitutionally undertaken prior to an adversary judicial determination of obscenity.

We are mindful of the fact that even attempts to regulate obscenity incorporation procedures for affording the required adversary hearing would themselves constitute prior restraints. For example, it might be argued that the expense of legal representation at such hearings, the apprehension as to whether or not the allegedly obscene materials should continue to be sold pending the outcome .of the hearing and so forth would serve to "chill" First Amendment rights. We can readily conceive, therefore, that much litigation would be spawned by the adoption of adversary hearing procedures. Nonetheless, it is apparent that there must be some permissible prior restraint, be it however settled, if obscenity is not protected by the First Amendment and State attempts to regulate it are to be enforceable. It is left to those states seeking to regulate obscenity to devise constitutionally acceptable procedures for the enforcement of any such regulations. *However, these procedures, among others, may have to incorporate provisions immunizing alleged violators from criminal liability from any activities occurring prior to an adversary judicial determination of the fact of obscenity.* (Italics added.)

Applying these principles to the cases before us, the arrest, as well as the seizures claimed to be incident thereto, are clearly invalid for lack of prior adversary determination of the obscenity of the materials upon which the arrest and seizures were based. The fact that in each case some materials were purchased rather than seized is of no moment in view of the requirement of an adversary determination of obscenity prior to arrest or threat of arrest.

This same principle has been echoed by various other federal courts; and on September 24, 1969 the Honorable Ben Krentzman of the United States District Court for the Middle District of Florida in issuing a preliminary injunction against any further seizures from and arrest of a bookstore owner before an adversary hearing on the question of obscenity, said —

On the basis of the foregoing facts, without making any finding as to whether any of the publications purchased or seized are obscene, it is the court's determination that the arrests and the charges brought against the plaintiffs as a result of the sale of four of the publications, and the seizure of other publications from the plaintiffs, both events being without a prior adversary determination of obscenity, produces irreparable harm or risk of irreparable harm to the plaintiffs.

This order should not be misread. Let no one infer that this court seeks to impede responsible and vigorous state action designed to check

the flow of obscenity in our society. The court, as well as the public is aware of the needs in this area. But as the end does not justify the means, here basic constitutional rights may not be trampled under the banner of public morality. If the phrase "law and order" has any meaning, certainly it requires public enforcement officials to operate within the framework of our constitution. (Masters v. Russell, —— F. Supp.——)

Possibly the most illuminating decision to date on this subject is that written by Judge McRae for the United States District Court for the Middle District of Florida in the case styled City News Center, Inc. v. Carson (No. 69-268-Civ-J, February 1970). In commenting on the need for a prior adversary hearing for finding probable cause before an arrest, Judge McRae said —

Respondents make the contention that the seizures made here were incident to an arrest for the act of selling obscene materials, which alleged illegal act took place in the presence of the arresting officer. In making such an arrest, the officer necessarily was placed in the position of having to determine probable cause that the materials being sold were in fact obscene before the arrest could be made. An ad hoc determination of obscenity by a single officer, uninformed by no more than three weeks experience with the vice squad and unfamiliar, by study or briefing, with constitutional principles is grossly insufficient to protect against unwarranted infringement of freedom of expression.

Even with the benefit of experience and briefing on the law, such a procedure would be inadequate because probable cause as to whether obscenity exists has come to be recognized as a matter of *constitutional judgment*, unique in the law because of the fragile nature of the right protected, and incapable of determination by a policeman, grand jury, or judge acting *ex parte*, without a prior finding of probable cause in a judicially-supervised adversary hearing.

The court is not unmindful of the additional burden placed upon the state by requiring an adversary hearing on a book's obscenity before making an arrest. However, when this burden is balanced against the detrimental effect to the free interchange of ideas that would result from requiring a bookstore owner to act as a censor of his stock-in-trade, the burden becomes minuscule, because this would require the seller to take everything off his shelf that anyone might find offensive. Such a "chilling effect" surely was meant to be proscribed by the architects of the First Amendment.

The record below clearly reflects that Mrs. Sorenson is a legitimate business woman who sells in her store all of the local newspapers, and many of the national magazines. In addition to these, she also sells hardback books, as well as having in stock at any given time some 3,500 paperback books. Even if she were able to accomplish the Herculean task of reading each and every publica-

tion on sale in her store, there is no guarantee that some of those which she personally found to be nonoffensive, would offend some other individual or group of individuals. There is little doubt that even such best sellers as *Portnoy's Complaint* by Philip Roth and *The Love Machine* by Jacquelyn Suzanne, are found by many to be obscene. Therefore, if Mrs. Sorenson's present conviction were allowed to stand, her only viable alternative would be to go completely out of the business of selling novels, and hope that no one would be offended by her selling *Ladies Home Journal* and *Life*. For these reasons, it is the decision of this court that the appellant's conviction in the lower court should be reversed.

This decision may well not be popular in many quarters, especially with those who through their public outcry, call for the suppression of everything which they find personally distasteful. However, it is the opinion of this court that if those concerned, bookstore proprietors and prosecuting officials alike, can approach this problem in a spirit of cooperation and make a genuine effort, a solution can be reached which will insure against both the dissemination of constitutionally obscene literature and at the same time allow the unfettered exchange of ideas.

In taking this appeal, the appellant raised several other points including the obscenity of the book in question. However, in view of the court's ruling on the necessity for a prior adversary hearing before arrest, it is not deemed necessary to decide any of the other points.

Judgment will be entered accordingly.