## Commonwealth v. Taylor

*Henry Martin* and *John Kradel,* Assistant District Attorneys, for Commonwealth.

*H. David Rothman,* for defendant.

SCULCO, J., August 28, 1972.—This matter is before this court on defendant's pretrial application to suppress evidence that was purchased by a law enforcement officer from defendant at defendant's place of business and application to quash indictment resulting therefrom.

Defendant, James F. Taylor, is the owner of a business establishment known as Taylor's Book Store located at 451 Donner Avenue, Monessen, Westmoreland County, Pa. This establishment was visited on several occasions by one Trooper Victor Hoffman and the relative chronological order of events in this matter is as follows:

On September 16, 1971, at approximately 11 a.m., Trooper Hoffman commenced his initial visit to defendant's establishment and examined the various merchandise located therein. The trooper made no purchase of any material or items on this first visit.

On September 24, 1971, around 2 p.m. Trooper Hoffman again returned to the store, proceeded to scrutinize certain material contained in a cabinet drawer located in the back of defendant's store, selected two publications titled "Foreplay" and "Girl Ghetto" Volume No. 1, and purchased them from defendant. On this visit, the trooper queried defendant as to whether defendant could acquire films for him. In substance, defendant answered in the affirmative and quoted a sale price of $25 per reel.

On September 28, 1971, the trooper returned to the store and was informed by defendant that the film had not yet arrived. The trooper was then requested to return a few days later to receive delivery of the film. Trooper Hoffman did return on October 5, 1971, and purchased from defendant, at the stated price of $25 a reel of film which was packaged in a white box reading "Copenhagen Color Films."

On October 9, 1971, at approximately 11:35 a.m., the trooper returned to defendant's store and purchased a deck of playing cards with various and sundry photographs located thereon and on October 28, 1971, this trooper concluded his final purchase of

materials from defendant, that being another reel of "Copenhagen Color Films."

Although additional material was acquired from defendant's shop under the guise of an issued search warrant, the nonadmissibility of this evidence is not in question.

As a result of sale of these items, defendant was subsequently accused of having unlawfully, willfully and knowingly sold obscene literature, films and playing cards at Taylor's Book Store located at 451 Donner Avenue, Westmoreland County, Pa.

Defendant on May 22, 1972, filed an application to quash the indictment and an application to suppress the alleged obscene materials both purchased and seized from defendant's premises. The Commonwealth answered defendant's application to suppress on May 26, 1972, and defendant's application to quash indictment on May 30, 1972.

A hearing date was set to take testimony in this matter. On June 2, 1972, the parties appeared before this court and testimony was taken. This singular issue evolved whether a criminal action can be commenced by the purchase of material, which prior to an administrative hearing and in the discretion of the purchasing law enforcement officer, the purchasing officer believes to be obscene.

Petitioner contends that preceding an arrest of or institution of criminal proceedings against one accused of selling obscene material, it is incumbent upon the Commonwealth to conduct a prior adversary hearing to determine the status of the material being sold. If such material is then judicially determined to be obscene, the criminal process may then be implemented to prohibit the sale of the judicially determined obscene material. Petitioner, as the foundation of his

argument, cites the Pennsylvania Supreme Court decision in Dugan v. 807 Liberty Avenue, Inc. and Thomas Benanati, 447 Pa. 281 (1972), which arose when the district attorney of Allegheny County sought and acquired an injunction which prohibited defendants from showing certain motion pictures asserted by the district attorney to be obscene. Petitioner builds upon this foundation by arguing that since the Pennsylvania Supreme Court held that the equity powers of the court could not be used to restrain the showing of films or the sale of films because the obscenity statutes of Pennsylvania do not provide for a prior prompt adversary hearing, and that the equity procedure was not that type of process, a natural and logical extension of the threads of this ruling would enmesh the criminal process.

The theory strongly advocated by petitioner is that there is no probable cause to institute an arrest or commence a criminal proceeding simply because a law enforcement officer buys a single item which he feels violates the law. Petitioner reasons that the actual commencement of a criminal proceeding is then a prior restraint on first amendment rights.

Although petitioner admits that these waters are somewhat yet uncharted, there being no [Pennsylvania] decisions that verbalize his contention, this court has found the path of this problem well traveled in the Federal court system.

The thrust of petitioner's argument is found in Delta Book Distributors, Inc. v. Cronvich, 304 F. Supp. 662, page 667, (1969) rev. sub. nom. Perez et al. v. Ledesma et al., 401 U.S. 82 (1971).

"Since prior restraint upon the exercise of First Amendment rights can be exercised through . . . arrest (with or without a warrant) of the alleged offender or through the threat of either or both seizure

and arrest, the conclusion is irresistible in logic and in law that none of these may be constitutionally undertaken prior to an adversary judicial determination of obscenity." (citing cases)

In Milky Way Products, Inc. et al. v. Leary et al. and New York Feed Company et al. v. Leary et al., 305 F. Supp. 288 (1969), affirmed 397 U.S. 98, 90 Supreme Ct. 817, the court, at page 296, directs itself to plaintiff's contention that a preliminary adversary hearing on the issue of obscenity is a requirement which must be satisifed prior to the inception of the criminal process, but aligns itself with the rationale of cases holding a directly opposite view. The court states in part:

"While what plaintiffs propose is indeed a relative 'novelty,' their argument is not without arguable connection to established principles . . . The argument is not merely plausible; it has won approval in several courts. (Citing Delta Book Distributors v. Cronvich, Inc. and others) But decisions we believe to be sounder, at least in the present state of learning, go the other way." (Citing cases.)

A timely decision repudiating petitioner's contention is found in Krahm v. Graham, Vol. 11, No. 11, Criminal Law Reporter dated June 14, 1972, page 2223. In the Krahm case, the court views this prior restraint argument as being overbroad. The opinion formulated in this case has as its basis the apparent findings of the United States Supreme Court in Milky Way Products, Inc., supra, and Perez, supra.

The final implied thrust of petitioner's argument is that arrest and prosecution are likely to deter activities of the kind of which they are directed.

This court concurs with the decision of Milky Way Products, Inc., supra, at page 297, where it is stated:

"It is inappropriate, we think, to 'weigh' (assuming we could) the relative impact of familiar criminal pro-

cedures against the innovation plaintiffs seek. It seems sufficient for our purposes that the supposed virtues . . . are directly antithetical to all pertinent indications in the Supreme Court's pronouncements implementing the First Amendment. The net effect of these expressions suggests that traditional criminal prosecutions, with their procedural safeguards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity." (Citing cases.)

A scrutinization of similar factual situations resulting in judicial rationales addressing themselves to this instant matter convinces this court that the first amendment does not require or warrant the implementation of the procedure petitioner seeks.

The court, therefore, enters the following

### ORDER

And now, to wit, August 28, 1972, after due and careful consideration of the matters raised in the application to suppress evidence and the application to quash indictment filed in behalf of defendant. James F. Taylor, and after hearing thereon, it is hereby ordered, adjudged and decreed that said application to suppress evidence and said application to quash indictment is denied.