James **GREGORY**, Plaintiff,

v .

**Rev. Glenn GAFFNEY, Rev. Glenn Flowe, Rev. John H. Connell, Jake Elliott and A. A. Mauney, Defendants.**

**Civ. No. 2657.**

United States District Court, W. D. North Carolina, Charlotte Division.

Argued Nov. 5, 1970.

Decided Jan. 20, 1971.

Woodrow Wilson Jones, J., dissented and filed opinion.

George S. Daly, Jr., Charlotte, N.C., for plaintiff.

James E. Griffin, Monroe, N.C., for defendants.

Robert B. Morgan, Atty. Gen. of N.C., Andrew A. Vanore, Jr., Asst. Atty. Gen., Burley B. Mitchell, Jr., and Charles A. Lloyd, Staff Attys., Raleigh, N.C., for State of North Carolina as amicus curiae.

Before CRAVEN, Circuit Judge, and JONES and McMILLAN, District Judges.

CRAVEN, Circuit Judge:

This is a suit brought by the manager of The Center Motion Picture Theatre in Monroe, North Carolina, to declare North Carolina General Statute 14–193 unconstitutional as in violation of the First Amendment to the Constitution of the United States. For exhibiting the film called "The Vixen" plaintiff was prosecuted under the statute and convicted in an inferior North Carolina court. He has appealed to the Superior Court of North Carolina and apparently proceedings there have been voluntarily held in abeyance pending our decision in this case. In addition to seeking a declaratory judgment, the plaintiff asks that we enjoin his further prosecution and all future prosecutions under the statute.

The questioned statute reads in its entirety:

N.C.G.S. *14–193—Exhibition of obscene or immoral pictures; posting of advertisements.*—If any person, firm, or corporation shall, for the purpose of gain or otherwise, exhibit any obscene or immoral motion pictures; or if any person, firm or corporation shall post any obscene or immoral placard, writings, pictures, or drawings on walls, fences, billboards, or other places, advertising theatrical exhibitions or moving picture exhibitions or shows; or if any person, firm, or corporation shall permit such obscene or immoral exhibitions to be conducted in any tent, booth, or other place or building owned or controlled by said person, firm, or corporation, the person, firm, or corporation performing either one or all of the said acts shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both. For the purpose of enforcing this statute any spectator, at the exhibition of an obscene or immoral moving picture may make the necessary affidavit upon which the warrant for said offense is issued.

The statute breaks down, for convenience, into three parts. The first part prohibits exhibition of any "obscene or immoral" motion picture. The second part prohibits "obscene or immoral" advertisements on walls, fences, billboards, etc., etc. The third part of the statute is simply a return to the first purpose of preventing exhibition of "obscene or immoral" pictures by reaching not only the exhibitor of the film but the person or company owning or controlling the building or other place in which the film may be exhibited.

On the facts of this case we do not reach the question of constitutionality of the middle section of the statute directed against the advertising of obscene movies in public places. The plaintiff has not been prosecuted for posting such advertisements nor does the record suggest that he has ever advertised his exhibitions in a manner that might bring him into conflict with this portion of the statute. In declining to consider the constitutionality of the advertising part of the statute we are aware that we are exercising more restraint than is required of a court in interpretations of statutes involving the priorities of the First Amendment, and that we are not limited to a construction of the statute in the context of the facts of this case. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). We think our reticence is justified by

the very nature of the difference between public advertising and the exhibition of motion pictures to those who choose to come and pay the price charged. It is clear that the state may, if it chooses, prevent assaults upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling adult individual to avoid exposure. Shinall v. Worrell, 319 F.Supp. 485 (E.D.N.C.1970). Thus, we need not be so concerned as to the possible chilling effect on public advertising as we must be in other areas of free speech.

■■ Coming to the other parts of the statute, which have the common purpose of making criminal the exhibition of "obscene or immoral" films, we think the statute is both vague and overbroad and hold it to be voided by the free speech clause of the First Amendment. To prohibit the dissemination of ideas with respect to morality flies in the face of the First Amendment. It is, of course, impossible to know whether the legislature used the word "immoral" in reference to sex, consumption of alcohol, tobacco, war, or the Christian sin of pride, although sex is the best guess. It is urged upon us by the state, however, that the legislature wrote colloquially and meant the conjunctive, i.e., as if written "obscene *and* immoral." If we so read it, we are left with a statute even emptier of constitutional meaning than the statute recently held void by another three-judge court in Shinall v. Worrell, *supra.* The word "obscene" is not self-defining. It is clear that the state may not constitutionally inhibit the exhibition of motion pictures as obscene unless the dominant theme of the material taken as a whole appeals to a prurient interest in sex, the material is patently offensive because it affronts national community standards, and is utterly without redeeming social value. Drive-In Theatres, Inc. v. Huskey, 435 F.2d 228 (4th Cir. 1970). For us to write into a statute elements that are

simply not there would, we think, be a usurpation of the state legislative process, especially inappropriate for a federal court. For the reasons stated in Shinall v. Worrell, *supra,* we decline to do so.

■ We have carefully considered the prayer for injunctive relief and have concluded that a declaratory judgment voiding portions of the statute as unconstitutional is a sufficient and appropriate remedy. It is reasonably clear that we are without power to enjoin the prosecution pending against Gregory by virtue of the language of 28 U.S.C. § 2283, Baines v. City of Danville, 337 F. 2d 579, 590 (4th Cir. 1964); C. Wright, Law of Federal Courts, 208 (1970), absent exceptional circumstances not present here. See Babbitz v. McCann, 320 F.Supp. 219 (E.D.Wis.1970).

■ As for further prosecutions, there is no evidence that there have been threats in that regard or any suggestion that the state might disregard our declaration of unconstitutionality unless enjoined. We sit, of course, as a trial court of coordinate jurisdiction with the Superior Court of North Carolina, which Court is charged, no less than are we, with enforcement of the commands of the Constitution. United States Constitution, Article VI. We think, therefore, that our decision, although a split one and in the form of a declaratory judgment, will be accorded respect by the litigants and by the state, subject, of course, to the right of appeal to the United States Court of Appeals for the Fourth Circuit, and subsequently by petition for certiorari to the Supreme Court. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Rockefeller v. Catholic Medical Center of Brooklyn and Queens, 397 U.S. 820, 90 S.Ct. 1517, 25 L.Ed.2d 806 (1970).

"The three-judge court statutes place a heavy burden on the federal judiciary * * * The direct appeal to the Su-

preme Court is contrary to the general scheme giving that Court substantial control over its own docket. For these reasons the Court has said that the statute is not 'a measure of broad social policy to be construed with great liberality, but * * * an enactment technical in the strict sense of the term and to be applied as such.'" C. Wright, Law of Federal Courts, 189 (1970).

Professor Wright notes that for the years 1955–1959 the average number of three-judge courts was 48.8 per year, that in the next five year period the average increased to 95.6 such cases per year, and that in fiscal year 1967 there were 171 cases heard by three-judge courts. We may judicially notice that there has been a sharp increase since 1967.

We think it wholly impractical, if not impossible, for the Supreme Court to effectively consider what now could well be several hundred direct appeals per annum from three-judge courts. The burden may account, in part, for recent decisions narrowing jurisdiction, Rockefeller v. Catholic Medical Center, *supra,* and making explicit an alternative route through the Courts of Appeals, Mitchell v. Donovan, *supra.* Although we will not hesitate to grant injunctive relief upon a showing of necessity, we are convinced that we should not routinely generate direct appeals to an already overburdened Supreme Court when another adequate remedy will suffice.

A declaratory judgment will be entered adjudging the statute unconstitutional in part.

WOODROW WILSON JONES, District Judge (dissenting):

The majority strikes down that portion of North Carolina General Statutes 14–193 which makes unlawful the exhibition of "obscene or immoral" films as being "both vague and overbroad" and violative of the free speech clause of the First Amendment. I must respectfully dissent from such decision.

In nullifying this state statute the majority ignores the teachings of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), in which the court upheld the validity of a federal and a state statute using quite similar language which my brothers say is too vague and overbroad to withstand the constitutional test. *Roth* was convicted by a jury in federal district court in New York of violating 18 U.S.C.A., 1461 (as it existed prior to its amendment), which made unlawful the mailing of "every obscene * * * or filthy book, pamphlet, picture * * *". One Alberts, whose appeal was considered along with Roth's, was convicted by a California court of violating a state statute which declared every person who * * * exhibits any "obscene or indecent writing" to be guilty of a misdemeanor.

Roth and Alberts argued, as does the plaintiff here, that the statutes did not provide reasonably ascertainable standards of guilt and therefore violated the constitutional requirements of due process. They contended that the words "obscene * * * or filthy" as used in the federal statute and the words "obscene or indecent" as used in the California statute "are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere".

The statutes in question in *Roth,* as General Statutes 14–193, do not define the terms obscene and the other words used, but the Supreme Court found that the trial courts below sufficiently followed the proper standard and used the proper definition of obscenity. The court said:

> "In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

The majority here finds the disjunctive use of the word "immoral" consti-

tutes a constitutional sin and wonders aloud whether the Legislature was referring to "sex, consumption of alcohol, tobacco, war, or the Christian sin of pride". A suggestion by the State that the legislative intent and meaning was the conjunctive use of the word, that is, as if written "obscene and immoral", is pronounced by the majority as being "even emptier of constitutional meaning" than another North Carolina statute recently held void by a three-judge court in Shinall v. Worrell, 319 F.Supp. 485 (E.D.N.C.1970).

The Supreme Court in *Roth* found no such difficulty with the disjunctive use of the words "filthy" in the federal statute and "indecent" in the California statute, and defined obscenity and set up a proper standard for judging it. The definition and standard declared in *Roth* and refined and elaborated upon in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) and in subsequent cases, declare that:

> "* * * three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters, and (c) the material is utterly without redeeming social value."

In *Roth* the court in speaking of the meaning of the terms "obscene, lewd, lascivious, or filthy", and "obscene or indecent", said:

> "Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L. Ed. 1877. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *'".

Nine years after *Roth* the court in upholding the validity of a state statute which did not contain a definition of the term "obscene", said in Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 962, 16 L.Ed.2d 56 (1966), that:

> "The contention that the term 'obscene' is also impermissibly vague fails under our holding in Roth v. United States, 354 U.S. 476, 491–492, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498. Indeed, the definition of 'obscene' adopted by the New York courts in interpreting § 1141 delimits a narrower class of conduct than that delimited under the *Roth* definition. People v. Richmond County News, Inc., 9 N.Y. 2d 578, 586–587, 216 N.Y.S.2d 369, 175 N.E.2d 681, 685–686 (1961), and thus § 1141, like the statutes in *Roth*, provides reasonably ascertainable standards of guilt."

The court further observed in *Mishkin*:

> "States are free to adopt other definitions of obscenity only to the extent that those adopted stay within the bounds set by the constitutional criteria of the *Roth* definition * * *".

A careful reading of the Supreme Court decisions leads to the conclusion that the states are free to adopt any definition of obscenity and a standard for judging it, either by legislative act or court decision, which is in keeping with that declared by the Supreme Court. A definition and standard can be more, but not less stringent than the Supreme Court criteria. Since the North Carolina statute contains no ex-

press definition of "obscene or immoral", the definition prevailing in the Supreme Court of the United States is imposed upon the state and must be applied by it. There is no reason to believe that the appellate courts of North Carolina would fail to apply such definition and standard.

Three-judge courts in Alabama, Georgia, Louisiana, and Kentucky have reached similar conclusions in recent decisions and have refused to strike down state obscenity statutes. Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 814–815 (M.D.Ala.1969); Great Speckled Bird of Atlanta Coop News Project v. Stynchcombe, 298 F.Supp. 1291 (N.D.Ga.1969); Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969); and Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky. London Division, 1968).

Federal courts should not strike down a state statute if any reasonable construction would save it. The Supreme Court in National Labor Relations Board v. Jones-Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), held:

> "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional, and by the other valid, our plain duty is to adopt that which will save the act."

The plaintiff cites Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) in aid and comfort of his position. *Stanley* did nothing more than strike down a state statute as being unconstitutional insofar as it made criminal the mere private possession of obscene materials in one's own home. United States v. Melvin, 419 F.2d 136 (4th Cir.1969).

I believe the statute is constitutional and should stand. I would dismiss this action and relegate the plaintiff to the state courts for the redress of his grievances. These courts are also interested in the constitutional rights of our people and there is no reason to believe these rights would not be protected there.