STATE OF NORTH CAROLINA v. JOE BRYANT

— AND —

STATE OF NORTH CAROLINA v. RAYMOND MITCHELL FLOYD

No. 24

(Filed 13 March 1974)

1. Obscenity— showing of motion pictures — contemporary community standards proper test for obscenity

   In a prosecution of defendant for the dissemination of obscenity in a public place, the fact that the prosecution was required to establish and did establish that the films involved were patently offensive when tested by "contemporary national community standards" rather

than by "contemporary community standards" affords defendants no ground for complaint.

2. **Constitutional Law § 18; Obscenity— dissemination of obscenity — test for obscenity**

Where G.S. 14-190.1 requires that material to be obscene must be utterly without redeeming social value, but the U. S. Supreme Court has held that the constitutional test is whether the material alleged to be obscene when taken as a whole lacks serious literary, artistic, political or scientific value, the statute imposed upon the State in this prosecution for dissemination of obscenity in a public place the necessity for proof substantially beyond that required by the test approved by the U. S. Supreme Court, and defendants were thereby afforded no ground for complaint.

3. **Constitutional Law § 18; Obscenity— specificity required of state obscenity statutes — application to hard-core pornography only**

In *Miller v. California,* 413 U.S. 15, the U. S. Supreme Court held that state obscenity statutes as written do not define what sexual conduct may be deemed obscene and patently offensive with sufficient specificity to comply with the guidelines set forth in *Miller,* but the state courts should be afforded an opportunity by construction to confine the obscene matter prohibited by their statutes to "hard-core" pornography.

4. **Obscenity— construction of obscenity statute — material considered obscene**

As the Court construes G.S. 14-190.1, the only material prohibited thereby as obscene consists of patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated and patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

5. **Indictment and Warrant § 9; Obscenity— dissemination of obscenity — sufficiency of warrant**

The conduct of defendants as charged in the warrants and as established by the verdicts constitutes a violation of G.S. 14-190.1 as construed by the N. C. Supreme Court, and the warrants gave defendants full and explicit notice that the obscene material on which these prosecutions are based was "hard-core" pornography which *Miller v. California* authorizes the state courts to prohibit.

APPEAL by defendants from the decision of the North Carolina Court of Appeals reported in 20 N.C. App. 223, 201 S.E. 2d 211.

Warrants for the arrest of defendants were issued 28 September 1971. The affidavit portion of the warrant against Joe Bryant (Bryant) reads as follows:

"The undersigned, G. C. Hager, being duly sworn, complains and says that at and in the County named above and on

or about the 10th day of September, 1971, the defendant named above did unlawfully, willfully, and did intentionally disseminate obscenity in a public place, to wit: The Adult Book Center, 407 North Tryon Street, Charlotte, N. C., in that he did provide obscene 8mm motion picture, did exhibit and make available 8mm motion pictures, and did rent and sell and provide obscene motion picture 8mm film which with the representation, embodiment, performance and publication of the obscene, and that the said 8mm motion picture film did show actual acts of sexual intercourse, fellatio and cunnilingus performed by and between human males and human females.

"The offense charged here was committed against the peace and dignity of the State and in violation of law G.S. 14-190.1."

The affidavit portion of the warrant against Raymond Mitchell Floyd (Floyd) is identical to that against Bryant except that the word "allow" appears instead of the word "provide" as the fifth word after the words "Charlotte, N. C."

Defendants were first tried, found guilty and sentenced in the District Court of Mecklenburg County. Upon appeal, the cases were consolidated for trial and tried *de novo* at the 6 March 1972 Session of Mecklenburg County Superior Court. Each defendant was found guilty, sentenced and appealed. The Court of Appeals found no prejudicial error. *State v. Bryant* and *State v. Floyd,* 16 N.C. App. 456, 192 S.E. 2d 693.

Defendants gave notice of appeal to the Supreme Court of North Carolina and also filed a petition for a writ of certiorari. This Court, on motion of the Attorney General, dismissed defendants' appeal and also denied certiorari. Defendants then filed a petition for certiorari in the Supreme Court of the United States for a review of the decision of the Court of Appeals. On 25 June 1973, the Supreme Court of the United States granted defendants' petition for writ of certiorari, vacated the judgment of the Court of Appeals, and remanded the case to the Court of Appeals "for further consideration in light of *Miller v. California,* 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct. 2607 (1973) ; *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L.Ed. 2d 446, 93 S.Ct. 2628 (1973) ; *Kaplan v. California,* 413 U.S. 115, 37 L.Ed. 2d 492, 93 S.Ct. 2680 (1973) ; *U. S. v. 12 200 Ft. Reels of Super 8mm Film,* 413 U.S. 123, 37 L.Ed. 2d 500, 93 S.Ct. 2665 (1973) ; *U. S. v. Orito,* 413 U.S. 139, 37 L.Ed. 2d

513, 93 S.Ct. 2674 (1973); *Heller v. New York,* 413 U.S. 483, 37 L.Ed. 2d 745, 93 S.Ct. 2789 (1973); *Roaden v. Kentucky,* 413 U.S. 496, 37 L.Ed. 2d 757, 93 S.Ct. 2796 (1973); and *Alexander v. Virginia,* 413 U.S. 836, 37 L.Ed. 2d 993, 93 S.Ct. 2803 (1973)," which had been decided 21 June 1973. *Bryant v. North Carolina,* 413 U.S. 913, 37 L.Ed. 2d 1036, 93 S.Ct. 3065.

Upon remand, the case was before the Court of Appeals for further consideration of the constitutionality of G.S. 14-190.1 as applied to defendants in the light of *Miller v. California, supra,* and the other cited cases. In an opinion by Chief Judge Brock, with whom Judge Vaughn concurred, the Court of Appeals reaffirmed the constitutionality of G.S. 14-190.1. Judge Parker dissented.

*Attorney General Robert Morgan and Associate Attorney Richard F. Kane for the State.*

*Smith, Carrington, Patterson, Follin & Curtis by Michael K. Curtis and J. David James for defendant appellants.*

BOBBITT, Chief Justice.

G.S. 14-190.1, the statute under which defendants are charged, was enacted by Chapter 405, Session Laws of 1971, to become effective 1 July 1971. Prior to consideration thereof, it seems appropriate to review briefly the content and fate of prior criminal statutes relating to the dissemination of "obscene" material.

The 1971 Act expressly repealed former G.S. 14-189.1 which had been enacted by Chapter 1227 of the Session Laws of 1957 and amended by Chapter 164 of the Session Laws of 1965. *See State v. McCluney,* 280 N.C. 404, 185 S.E. 2d 870 (1972), and *State v. Bryant,* 280 N.C. 407, 185 S.E. 2d 854 (1972).

Former G.S. 14-189.1, a comprehensive statute, provided in part: "It shall be unlawful for any person, firm or corporation to purposely, knowingly or recklessly disseminate obscenity . . . . " Section 14-189.1(b) defined "obscene" as follows: "A thing is obscene if considered as a whole its predominant appeal is to the prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or presentation of such matters."

A warrant based on former G.S. 14-189.1 (a) was considered by this Court in *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849 (1961). The warrant was held fatally defective because it did not sufficiently describe and identify the alleged obscene matter to protect the accused from a second prosecution. The constitutionality of former G.S. 14-189.1 was not discussed.

In *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304, decided 24 June 1957, the Supreme Court of the United States affirmed convictions based on violations of federal and California statutes. As summarized in the opinion of Justice Brennan: "The federal obscenity statute makes punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy . . . or other publication of an indecent character.' The California statute makes punishable, inter alia, the keeping for sale or advertising material that is 'obscene or indecent.' " *Id.* at 491, 1 L.Ed. 2d at 1510, 77 S.Ct. at 1312. It was held "that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." *Id.* at 492, 1 L.Ed. 2d at 1511, 77 S.Ct. at 1313. It was said that the test was "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Id.* at 489, 1 L.Ed. 2d at 1509, 77 S.Ct. at 1311. The court approved instructions of both trial judges which sufficiently followed that standard. The statutes involved in *Roth* did not define with specificity what material would be considered obscene. In holding that "obscenity is not within the area of constitutionally protected speech or press," it was noted that "obscenity" had been rejected "as utterly without redeeming social importance." *Id.* at 484, 1 L.Ed. 2d at 1507, 77 S.Ct. at 1309. Justice Brennan, the author of the majority opinion, was speaking for five members of the Court.

Chief Justice Warren concurred in the result in both cases but expressed doubts as to the wisdom of the broad language used in the majority opinion. Justice Harlan concurred in the result in the case involving the California statute but dissented in the case involving the federal statute. Justice Douglas, joined by Justice Black, dissented in both cases, expressing the view that the statutes were violative of the constitutional guarantees of free speech and press.

In *Jacobellis v. Ohio,* 378 U.S. 184, 12 L.Ed. 2d 793, 84 S.Ct. 1676, decided 22 June 1964, the Supreme Court of the United States reversed a conviction under the Ohio obscenity statute. Jacobellis was charged with the possession and exhibition of "The Lovers," a French film depicting an unhappy marriage and the wife's love affair with a young archaeologist. Included in the last reel was an explicit, but fragmentary and fleeting, love scene. The conviction had been affirmed by the Ohio Court of Appeals, 115 Ohio App. 226, 175 N.E. 2d 123, and thereafter by the Supreme Court of Ohio, 173 Ohio St. 22, 18 Ohio Ops. 2d 207, 179 N.E. 2d 777 (1962). The opinion of Justice Brennan, with whom Justice Goldberg joined, expressed the views of two of the six members who voted for reversal. Justice White concurred in the reversal without opinion. Justice Stewart concurred in the reversal on the ground that under the First and Fourteenth Amendments, criminal obscenity laws are constitutionally limited to hard-core pornography, and that the film, "The Lovers," was not hard-core pornography. Justice Black, with whom Justice Douglas joined, concurred in the reversal on the broad ground that a conviction for exhibiting a motion picture abridges freedom of the press as safeguarded by the First Amendment, which is made obligatory on the States by the Fourteenth Amendment. Two of the three dissenting Justices expressed their views in a dissenting opinion by Chief Justice Warren, with whom Justice Clark joined, and the third, Justice Harlan, expressed his views in a separate dissenting opinion.

In *Jacobellis,* the opinion of Justice Brennan expressed the view that "contemporary community standards" as used in *Roth* meant contemporary *national* community standards.

On 21 March 1966 the Supreme Court of the United States, by its decision in *Memoirs v. Massachusetts,* 383 U.S. 413, 16 L.Ed. 2d 1, 86 S.Ct. 975, notwithstanding uncertainty engendered by the diverse views of individual justices, indicated substantial modification of the criteria stated in *Roth* in respect of what may be considered "obscene."

In *Memoirs,* the Supreme Judicial Court of Massachusetts, in a civil equity suit, adjudged obscene the book commonly known as "Fanny Hill," relating to the adventures of a young girl who became a prostitute. The Supreme Court of the United States reversed. The opinion of Justice Brennan, with whom Chief Justice Warren and Justice Fortas joined, expressed the

views of three of the six members who voted for reversal. The remaining three, Justice Black, Justice Douglas and Justice Stewart, in separate opinions, expressed diverse views in support of their votes for reversal. The dissenting Justices, Justice Clark, Justice Harlan and Justice White, in separate opinions, expressed diverse views for their dissents.

In *Memoirs,* the trial judge received the book in evidence, heard the testimony of experts and accepted other evidence, such as book reviews, in order to assess the literary, cultural or educational character of the book. He adjudged "Fanny Hill" obscene and "not entitled to the protection of the First and Fourteenth Amendments to the Constitution of the United States." His judgment was affirmed by the Supreme Judicial Court of Massachusetts. *Attorney General v. "John Cleland's Memoirs of a Woman of Pleasure,"* 349 Mass. 69, 206 N.E. 2d 403 (1965).

The opinion of the Supreme Judicial Court of Massachusetts included the following: "[T]he fact that the testimony may indicate this book has some minimal literary value does not mean it is of any social importance. We do not interpret the 'social importance' test as requiring that a book which appeals to prurient interest and is patently offensive must be unqualifiedly worthless before it can be deemed obscene." 349 Mass. at 73, 206 N.E. 2d at 406.

The opinion of Justice Brennan stated that the definition of obscenity in *Roth,* as elaborated in subsequent cases, required that these three elements must coalesce: "[I]t must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts, supra,* at 418, 16 L.Ed. 2d at 5-6, 86 S.Ct. at 977. The opinion of Justice Brennan further stated: "The Supreme Judicial Court erred in holding that a book need not be 'unqualifiedly worthless before it can be deemed obscene.' A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently;

the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness. Hence, even on the view of the court below that Memoirs possessed only a modicum of social value, its judgment must be reversed as being founded on an erroneous interpretation of a federal constitutional standard." *Id.* at 419-420, 16 L.Ed. 2d at 6, 86 S.Ct. at 978.

In *Shinall v. Worrell*, 319 F. Supp. 485, decided 18 December 1970, the three-judge federal court composed of Circuit Judge Craven and of District Judges Butler and Larkins, held G.S. 14-189.1 "unconstitutional on its face and void because it abridges the Freedom of Speech Clause of the First Amendment made applicable to the states by the Fourteenth Amendment." After comparing the elements of obscenity as defined in G.S. 14-189.1 with the elements of obscenity as defined in *Memoirs*, Circuit Judge Craven, for the three-judge court, concluded: "Only the first of the three tests of G.S. 14-189.1 is in compliance of the minimum three-pronged standard of *Memoirs*."

In *Gregory v. Gaffney*, 322 F. Supp. 238, decided 20 January 1971, a three-judge federal court in a split decision held that portions of G.S. 14-193 which made criminal the exhibition of "obscene or immoral" films were unconstitutionally vague and overbroad and violated the free speech clause of the First Amendment. The majority view was set forth in an opinion by Circuit Judge Craven. District Judge Jones dissented, expressing his views in a dissenting opinion.

The Attorney General of North Carolina did not seek appellate review of the decisions in *Shinall* and *Gregory*. Instead, attention was given to the drafting of the 1971 Act codified as G.S. 14-190.1 in an effort to comply with the *then* current criteria apparently established by the Supreme Court of the United States. G.S. 14-190.1, on which these prosecutions are based, provides in pertinent part:

"(a) It shall be unlawful for any person, firm or corporation to intentionally disseminate obscenity in any public place. A person, firm or corporation disseminates obscenity within the meaning of this Article if he or it:

\*        \*        \*

"(3) Publishes, exhibits or otherwise makes available anything obscene; or

"(4) Exhibits, broadcasts, televises, presents, rents, sells, delivers, or provides; or offers or agrees to exhibit, broadcast, televise, present, rent or to provide; any obscene still or motion picture, film, filmstrip, or projection slide, or sound recording, sound tape, or sound track, or any matter or material of whatever form which is a representation, embodiment, performance, or publication of the obscene.

"(b) For purposes of this Article any material is obscene if:

"(1) The dominant theme of the material taken as a whole appeals to the prurient interest in sex; and,

"(2) The material is patently offensive because it affronts contemporary national community standards relating to the description or representation of sexual matters; and,

"(3) The material is utterly without redeeming social value; and,

"(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina."

G.S. 14-190.1 became effective 1 July 1971. The alleged violations thereof by defendants occurred 10 September 1971. The first decision relating to the constitutionality of G.S. 14-190.1 was *State v. Bryant* and *State v. Floyd*, 16 N.C. App. 456, 192 S.E. 2d 693, decided 22 November 1972 by the Court of Appeals on the appeals of defendants in these cases. In an opinion by Chief Judge Mallard, the constitutionality of G.S. 14-190.1 was upheld as in compliance with the announcements of the Supreme Court of the United States in *Roth* and *Memoirs*. This Court agreed.

In *Miller*, the defendant was convicted of mailing unsolicited sexually explicit material in violation of a California statute which defined "obscene" as follows: "'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, *i.e.*, a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance." The Supreme Court of the United States vacated the

judgment of the California appellate court which had affirmed the conviction and remanded the case to the California appellate court for further proceedings.

The decision in *Miller* represents the views of *five* members of the Court as expressed in the opinion of Chief Justice Burger. *All* members of the Court rejected and abandoned the obscenity test as formulated in *Memoirs*. Speaking for five members of the Court, Chief Justice Burger undertook the difficult task of defining "the standards which must be used to identify obscene material that a state may regulate without infringing the First Amendment as applicable to the States through the Fourteenth Amendment." *Miller v. California, supra,* at 20, 37 L.Ed. 2d at 428, 93 S.Ct. at 2612. After citing prior decisions which established that "obscene" material is not protected by the First Amendment, Chief Justice Burger stated: "We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. [Citation omitted.] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, *as written or authoritatively construed.* A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." (Italics added.) *Id.* at 23-24, 37 L.Ed. 2d at 430, 93 S.Ct. at 2614.

Chief Justice Burger further stated: "We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) [whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law] of the standard announced in this opinion, supra:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." *Id.* at 25, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615.

Chief Justice Burger further stated: "The basic guidelines for the trier of fact must be: (a) Whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest [citation omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615.

[1]  We note that our General Assembly incorporated in G.S. 14-190.1(b) (2) a requirement that material to be obscene must be patently offensive because it affronts "contemporary *national* community standards relating to the description or representation of ·sexual matters." (Italics added.) This was in accord with the view expressed by Justice Brennan in *Jacobellis,* presumably shared by Justice Goldberg and Justice White. Under *Miller,* whether material alleged to be obscene is patently offensive may be determined by "contemporary community standards" rather than by "contemporary national community standards." The fact that the prosecution in these cases was required to establish and did establish that the films involved here were patently offensive when tested by "contemporary national community standards" affords defendant no ground of complaint.

[2]  We further note that our General Assembly incorporated in G.S. 14-190.1(b) (3) the requirement indicated in *Memoirs* that material to be obscene must be "utterly without redeeming social value." Under *Miller,* the constitutional test is whether the material alleged to be obscene, "taken as a whole, lacks serious literary, artistic, political or scientific value." 413 U.S. at 24, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615. In the present cases, there was ample evidence to support the jury finding that the films involved herein were "utterly without redeeming social value," more stringent criteria than indicated in *Miller.* The fact that the prosecution in these cases was required to meet the more difficult test gives these defendants no ground for complaint.

In the respects noted above, G.S. 14-190.1 imposes upon the prosecution the necessity for proof substantially beyond that required by the constitutional standards approved in *Miller.*

However, the broad terms in which obscene material is defined in G.S. 14-190.1(b) fall far short of Miller's require-

ment that the sexual conduct which may be deemed obscene and patently offensive must be specifically defined. A comparison of the provisions of G.S. 14-190.1(b) and the example approved in *Miller,* quoted above, illustrates plainly the wide gap between our statute *as written* and the requirements of *Miller.*

If our statute had specifically defined the sexual conduct which may be deemed obscene and patently offensive as described in the example approved in *Miller,* quoted above, the conduct charged in the warrants and established by the evidence would have constituted violations of its express terms. The evidence, including stipulated facts, is reviewed by Chief Judge Mallard in *State v. Bryant* and *State v. Floyd,* 16 N.C. App. 456, 192 S.E. 2d 693. Further discussion thereof is unnecessary. The pornography here involved is obscene material whether tested by *Roth, Memoirs* or *Miller.*

In *Miller,* the majority (five) undertook the difficult task of formulating new guidelines whereby a state, by specifically defining the sexual conduct deemed patently offensive, could at least prohibit the dissemination of *hard-core* pornography. We note that four of the justices, including the author of the opinions in *Roth* and *Memoirs,* were of opinion that the California statute under consideration was void on its face and voted for *reversal.*

We refer next to Chief Justice Burger's statement in *Miller* that the sexual conduct which may be deemed patently offensive "must be specifically defined by the applicable state law, as written or as authoritatively construed." When *Miller* and companion cases were decided the Supreme Court of the United States had before it many petitions for certiorari similar to that of these defendants. Since the judgment in each was vacated —but not reversed—and the case remanded for further consideration in the light of *Miller* and companion cases, it seems clear that each of these cases involved a state statute which *as written* did not comply with the requirements of *Miller.*

Footnote 6 to Chief Justice Burger's opinion in *Miller* includes the following: "We do not hold, as Mr. Justice Brennan intimates, that all states other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed *heretofore or hereafter,* may well be adequate. See *United States v. 12 200-Ft. Reels of Film,* 413 U.S. at 130 n. 7, 37 L.Ed. 2d at 507, 93 S.Ct. at 2670." (Italics added.)

Footnote 7 to Chief Jusice Burger's opinion in *United States v. 12 200-Ft. Reels, supra,* reads: "We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where ' "a serious doubt of constitutionality is raised" ' and ' " a construction of the statute is fairly possible by which the question may be avoided." ' [Citations omitted.] If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see *United States v. Orito* [citation omitted], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California* [citation omitted]."

In *United States v. Thevis,* 484 F. 2d 1149 (1973), the United States Court of Appeals for the Fifth Circuit construed 18 U.S.C. § 1462 (transportation by common carrier of obscene material in interstate commerce) as applicable to material which is obscene under *Miller* guidelines and affirmed convictions in prosecutions based on conduct prior to *Miller.* We note that 18 U.S.C. § 1462 *as written* related to "any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character. . . ."

In *United States v. One Reel Film,* 481 F. 2d 206 (1973), the United States Court of Appeals for the First Circuit held 19 U.S.C. 1305(a) (importation of obscene material) as applicable to material which is obscene under *Miller* guidelines and affirmed a conviction based on conduct prior to *Miller.* We note that the material regulated by 19 U.S.C. 1305(a) *as written* is generally described by the words "obscene," and "immoral."

In *United States v. Lang,* 361 F. Supp. 380 (C.D. Cal. 1973), cited by defendants, a United States District Judge dismissed an indictment based on 18 U.S.C. § 1461 (placing obscene material in United States mails) on the ground the judicial construction subsequently placed upon it would deprive defendants "of due process by having denied them fair warning that their acts, when committed, constituted a crime." The material regulated by 18 U.S.C. § 1461 *as written* is generally described by the words "obscene," "lewd," "lascivious," "indecent," "filthy,"

and "vile." (Note: The nature of the allegedly obscene material involved in *Lang* does not appear.)

**[3, 4]**   In our view, the majority in *Miller* held: The state statutes *as written* do not define what sexual conduct may be deemed obscene and patently offensive with sufficient specificity to comply with the guidelines set forth in *Miller*. Since the standards originally stated in *Roth* and modified in *Memoirs* have been superseded by those enunciated in *Miller,* the state courts should be afforded an opportunity by construction to confine the obscene matter prohibited by its statute to "hard-core" pornography such as that set forth in the example approved in *Miller*. Accordingly, as we construe G.S. 14-190.1, the only material prohibited thereby as obscene consists of the following:

"(a)  Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b)  Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

We note that our statute *as written* applies only when "[t]he material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina." G.S. 14-190.1(b) (4).

**[5]**   As stated above, the conduct of defendants as charged in the warrants and as established by the verdicts constitute violations of G.S. 14-190.1 as construed by this Court. No decision of this Court or of the Court of Appeals has applied G.S. 14-190.1 to allegedly obscene material other than that prohibited by our present construction of its provisions.

The warrants gave defendants full and explicit notice that the obscene material on which these prosecutions are based was "hard-core" pornography. Notwithstanding, defendants contend the definition of obscene material in G.S. 14-190.1 is vague and overbroad and therefore insufficient to give notice of what conduct might be considered a violation of its terms. This contention would have merit if made in a case in which the allegedly obscene material fell short of the hard-core pornography which *Miller* authorizes the state courts to prohibit. It would be naive to suggest that these defendants were not fully aware that the hard-core pornography they were disseminating constituted obscene material of the grossest character. As in *Redlich v. Capri*

*Cinema, Inc.*, 349 N.Y.S. 2d 697 (1973), the ultimate acts of sexual perversion here involved would have been regarded as "obscene" by the standards of Sodom and Gomorrah.

We are aware of the diversity of decisions in the various state jurisdictions which have considered the constitutionality of their statutes in the light of *Miller* and companion cases. Full evaluation of these decisions would require consideration in detail of the statute and decisions of the particular jurisdiction, the specificity of the accusation and the nature of the evidence. To do this would require us to go far beyond the already extended limits of this opinion.

State court decisions (in addition to that of our Court of Appeals) generally in accord with the conclusion reached herein include the following: *Mitchum v. State*, _____ Tenn. Crim. App. _____ , _____ S.W. 2d _ _ (1973) ; *State v. Watkins*, _____ S.C. _____, 203 S.E. 2d 429 (1973) ; *State ex rel. Keating v. Vixen*, 35 Ohio St. 2d 215, 301 N.E. 2d 880 (1973), and companion Ohio cases; *State v. J-R Distributors, Inc.*, 82 Wash. 2d 584, 512 P. 2d 1049 (1973) ; *People v. Enskat*, 33 Cal. App. 3d 900 (1973) ; *Redlich v. Capri Cinema, Inc., supra*.

State court decisions generally contra to the conclusion reached herein include the following: *State v. Shreveport News Agency*, _____ La. _____ , 287 So. 2d 464 (1973), a split decision; *Stroud v. Indiana*, _____ Ind. _____, 300 N.E. 2d 100 (1973), and companion Indiana case; *Papp v. State*, 281 So. 2d 600 (Dist. Ct. App. Fla. 1973).

See also, *Rhodes v. State*, 283 So. 2d 351 (Fla. 1973) ; and *State v. Wedelstedt*, 213 N.W. 2d 652 (Iowa 1973).

The burden now placed on the prosecution by G.S. 14-190.1 to establish that the allegedly obscene material affronts contemporary *national* community standards and is *utterly* without redeeming social value seems likely to preclude successful prosecution except in isolated cases involving expensive and extended trials. Whether the present decision of this Court is upheld or reversed it would seem appropriate and urgent for the General Assembly to give consideration to the amendment of G.S. 14-190.1 and associated statutes so as to bring them in accord with the guidelines of *Miller* and thereby place no greater burden upon the prosecution than required by the *constitutional* standards of *Miller*.

The decision of the North Carolina Court of Appeals is affirmed.

Affirmed.